UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
UNITED STATES OF AMERICA,

- against -

**MEMORANDUM OF DECISION**

08 CR 0065-4 (RJD)

ALEJO POLANCO, and
EMILIANO VASQUEZ.

Defendants.
---------------------------------------------------------- x

DEARIE, District Judge.

Just prior to the recently concluded trial of this matter, defendant Emiliano Vasquez asked the Court to appoint yet another Criminal Justice Act ("CJA") attorney. As is his practice, Vasquez accused his current attorney, Michael Hurwitz, of engaging in harassment and intimidation, failing to mount a vigorous defense, and applying undue pressure on him to accept the government's plea offer. Vasquez filed a disciplinary grievance against Hurwitz, expressed in the most general terms, no doubt to bolster his application and perhaps force the Court's hand.

The Court treats all such allegations with the utmost seriousness. If there were any real substance to Vasquez's complaints, the Court would have granted the application without hesitation, even though that course of action would have required the Court to adjourn the already much-delayed trial date. But the Court reviewed the record and found no good cause to

relieve Hurwitz, while finding ample cause to believe that Vasquez's complaints are disingenuous. The Court therefore denied the application.[1]

## I. BACKGROUND

Vasquez's dissatisfaction must be evaluated in the context of his previous complaints against appointed CJA counsel – he has, in fact, sought to terminate all four of the attorneys assigned to represent him. The Court's review of those requests and attendant hearings reveals a history of baseless competency complaints, either generic and overbroad, or specific but trivial. Moreover, in those instances where counsel was relieved, the decision had nothing to do with competence. Perhaps most importantly, though, the Court's review reveals that Vasquez has misrepresented the nature of his relationship with past counsel to the Court, a fact that makes it difficult to accept his representations now.

Vasquez complained about his first counsel, Bobbi Sternheim, in a pro se submission directly to the Hon. David G. Trager, stating that Sternheim had not communicated with him often enough and had not devoted enough time to the case. (Vasquez Letter, Sep. 15, 2009, ECF No. 48). Judge Trager addressed these complaints at a status conference, (Hr'g Mins., Feb. 3, 2010, ECF No. 64), and the Court has reviewed a transcript of that hearing. When questioned by Judge Trager, Vasquez added no compelling details whatsoever to his general criticisms. Rather, Vasquez complained that Sternheim had not provided him with a copy of the complaint, even though there is no complaint; had not asked for the return of his wallet and watch; and did not have a Spanish interpreter available when he called her office, even though Sternheim always

---

[1] The Court initially denied Vasquez's request at the status conference held on July 24, 2013, subject to additional inquiry into the basis of Vasquez's grievance and the availability of attorney Lee Ginsberg (see infra p. 7). The Court then expressly denied the request on the record at the status conference held on July 29, 2013. Although United States v. Simeonov, 252 F.3d 238, 241 (2d Cir. 2001) suggests that no further action is required, this Memorandum and Order sets forth the Court's findings and reasoning in greater detail.

2

brought a translator to their face-to-face meetings. Judge Trager denied the request for substitute counsel.

Meanwhile, because the charges against Vasquez made him death-penalty eligible, learned CJA counsel Lee Ginsberg had been assigned to the defense alongside Sternheim. The Department of Justice eventually decided not to seek the death penalty, and only then did Judge Trager relieve Sternheim. (Hr'g Mins., September 14, 2010, ECF No. 90). The Court has reviewed a transcript of that hearing as well, which again reveals no specific credible complaints that warranted Sternheim's replacement. On the contrary, Sternheim and Ginsberg asked Judge Trager to let Vasquez decide which of them should continue the representation. Judge Trager acceded to this request, and Vasquez chose Ginsberg.

After six months, Vasquez's relationship with Ginsberg soured as well. Vasquez directed Ginsberg to file a letter with the Court asking for substitute counsel. (Ginsberg Letter, March 25, 2011, ECF No. 104). According to Ginsberg's letter, Vasquez again vaguely complained that counsel did not sufficiently communicate with him and had not visited him often enough. Ginsberg himself supplied the only salient detail, explaining in his letter that he found it difficult to have "meaningful, reasonable conversation" with Vasquez. The Hon. Sandra L. Townes, relieved Ginsberg on April 29, 2011. (Hr'g Mins., ECF No. 110). The Court has reviewed a draft transcript of that hearing as well, but it sheds no further light on the specific nature of Vasquez's complaints. Rather, Judge Townes made clear that she was relying entirely on Ginsberg's assessment of his relationship with Vasquez, and did not consider whether Vasquez's complaints had merit. She then appointed attorney Joseph Kilada.

Kilada would not last either. After approximately sixteen months, Vasquez personally filed a submission complaining of Kilada's representation and moved to represent himself.

3

(Vasquez Pro Se Rep. Mot., Sep. 7, 2012, ECF No. 141). Vasquez once again complained about counsel's diligence in communicating with him and defending the case, but this time leveled more specific charges. Those charges, however, were trivial: Vasquez claimed that Kilada had not assigned an investigator and had not engaged in motion practice, despite the purported existence of issues "regarding due process, speedy trail [*sic*], discovery, and pre-trial motions practice . . . prosecutorial discretion, [and] the validity of an indictment[.]" In his submission, Vasquez further explained that he was preparing a disciplinary grievance against Kilada to file with state authorities (which he eventually did). While this motion was pending, Vasquez sent a letter to Judge Townes asking for a transcript of his competency hearing, complaining that Kilada had not supplied it and that he had not been able to communicate with Kilada. (Vasquez Letter, Dec. 18, 2012, ECF No. 148).

Before Judge Townes could rule on Vasquez's motion to represent himself, a Curcio conflict arose with Kilada's representation. Kilada had participated in a proffer session at which another client, whom the government was likely to call at trial, made statements incriminating Vasquez. Kilada asked to be relieved as counsel, citing that conflict. (Kilada Letter, Jan. 11, 2013, ECF No. 150 (under seal)). Judge Townes granted the application on January 22, 2013, substituting Hurwitz. (Hr'g Mins., Jan. 22, 2013, ECF No. 156). The Court has also reviewed a draft transcript of this hearing: Judge Townes did not make any findings regarding Kilada's competence, relieving him solely on account of this Curcio conflict.

Potential Curcio issues lingered over Hurwitz's representation as well, due to his brief prior representation of another cooperating witness. Hurwitz's conflict was much more attenuated than Kilada's, because his cooperating client did not make statements incriminating Vasquez and was unlikely to testify – and in fact did not testify – at trial. Rather, Hurwitz's

4

cooperating client made statements regarding yet another possible witness, raising the remote possibility that, if the witness testified, Hurwitz would hold back on cross-examination for fear of revealing his cooperating client's confidences. (Gov't Curcio Letter 5, Jan. 17, 2013, ECF No. 154).

Curcio counsel was appointed, and Vasquez twice waived his right to conflict-free representation. Vasquez first waived the conflict before the Magistrate Judge Roanne L. Mann. (Hr'g Tr., ECF No. 209).[2] At that same hearing, Vasquez had intended to plead guilty and allocute to the charges in Count Four of the superseding indictment, the felony murder count. However, once Judge Mann explained the charges to him, Vasquez declined to enter a guilty plea, and instead proclaimed his innocence – an incident that relates to his present complaints and to which the Court shall return momentarily. Vasquez waived any potential Curcio conflict a second time before this Court on April 23, 2013. Hurwitz has since assured the Court that he no longer represents the cooperating witness and that he has never represented any co-defendant.

As the August trial date approached, Vasquez raised his current set of complaints against Hurwitz, who brought them to the attention of the Court via letter dated July 12, 2013. (Hurwitz Letter, ECF No. 205). Hurwitz's letter explained that Vasquez "desires that the Court appoint substitute counsel" and noted that Vasquez had "filed a complaint with the Disciplinary Committee." Realizing the impossibility of substituting counsel without delaying the trial, the Court initially afforded Hurwitz several days to attempt reconciliation with Vasquez. Unfortunately, that effort did not bear fruit, despite promising beginnings. Accordingly, the Court conducted a status conference via telephone on July 23, 2013 to inquire into the reasons for Vasquez's dissatisfaction with Hurwitz and ascertain the basis of his formal grievance. (Hr'g

---

[2] Vasquez also withdrew his motion to represent himself at this hearing.

Mins., ECF No. 208). Hurwitz explained that Vasquez got upset at times during their conversations and believed Hurwitz interrupted him too frequently. Hurwitz surmised that Vasquez was impatient with his attempts to explain the case in legal terms, referencing the abortive plea allocution before Judge Mann. However, Hurwitz did not know the specific basis of the disciplinary grievance.

The following day, July 24, 2013, the Court heard directly from Vasquez. (Hr'g Mins., ECF No. 210). For the most part, Vasquez offered the same sort of generalized protests that he had leveled against each of his previous attorneys, explaining that he had disagreements with Hurwitz and that Hurwitz had been "harassing" him. He did add a few drops of specificity, alluding to Hurwitz's attenuated <u>Curcio</u> conflict (which he had already waived) and claiming that Hurwitz pressured him to enter a plea of guilty despite his innocence, presumably at the March 19, 2013 hearing before Judge Mann. Surprisingly, Vasquez also told the Court that he had reestablished contact with attorney Ginsberg, who was willing to resume his earlier representation. Vasquez even claimed that he had always gotten along with Ginsberg. Of course, that representation seems impossible to reconcile with Ginsberg's earlier withdrawal from the case. The Court would quickly learn that it was false.

After the July 24th conference, and with Vasquez's permission, the Court obtained and reviewed a copy of the disciplinary grievance, a one-page transmittal from defendant to state disciplinary authorities, referring complaints against both Kilada and Hurwitz. The grievance includes the same cursory allegations that both attorneys "harrass[ed]" and "intimidated" Vasquez. It also repeats Vasquez's contention that Hurwitz pressured him to plead guilty plea.

The Court also contacted Ginsberg to determine whether he was indeed willing and able to come back into the case at such a late juncture. In response, Ginsberg painted a very different

6

picture of their relationship than Vasquez had at the earlier conference. In a letter to the Court dated July 26, 2013, he briefly recapped the dispute that had led Vasquez to seek his termination. Ginsberg also stated that he had no contact with Vasquez after he was relieved, except a short consultation with a relative of Vasquez, who inquired about retaining him but did not. The letter further detailed an e-mail exchange with Vasquez in which Vasquez apparently threatened to file another grievance (his third) against Ginsberg if Ginsberg refused to meet with him.

At the final status conference addressing this issue on July 29, 2013, the Court told Vasquez that Ginsberg had disavowed any interest in resuming the representation. The Court expressed concern with Vasquez's apparent lack of candor. Inexplicably, Vasquez stood by his earlier representations and claimed that he had never complained about Ginsberg, brazenly daring the Court to check the docket, while apparently not realizing that the Court already had.

## II. DISCUSSION

A criminal defendant does not enjoy an unfettered right to counsel of his choice. United States v. Brumer, 528 F.3d 157, 160 (2d Cir. 2008). Rather, so long as the district court undertakes sufficient inquiry into the basis of his complaint, a defendant's motion to substitute counsel is committed to the court's sound discretion. See Simeonov, 252 F.3d at 241.

In ruling on such a motion, the district court may consider the timeliness of the defendant's request. Id. Indeed, when the defendant seeks new counsel on the eve of trial, the court may deny the motion unless "unusual circumstances" are shown to exist.[3] United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997). However, defendant's delay will not justify the court's

---

[3] While the case law does not clearly define the "eve of trial" for purposes of a motion to substitute counsel, the Court concludes that the phrase includes any situation where, as here, substitution would mandate a continuance of trial to accommodate newly appearing counsel's need to become familiar with the matter in order to present an effective defense.

7

denial of substitution when counsel is providing constitutionally ineffective representation in violation of the Sixth Amendment. Brumer, 528 F.3d at 161.

There are at least three ways in which counsel's continued representation may violate the Sixth Amendment. First, if counsel's representation is objectively incompetent, then the district court should of course terminate the representation. Schmidt, 105 F.3d at 89 ("Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel"); See generally Strickland v. Washington, 466 U.S. 668 (1984). But even if counsel is otherwise competent, continued representation may nevertheless violate the Sixth Amendment when the dispute leads to a complete breakdown in communication between the defendant and his attorney. Schmidt, 105 F.3d at 89. In considering whether that breakdown has occurred, the court should not rely solely on the defendant's subjective perception of acrimony: the defendant must "afford the court with legitimate reasons for the lack of confidence." McKee v. Harris, 649 F.2d 927, 932 (2d Cir. 1981). Moreover, the court should also consider whether the defendant's own conduct substantially and unjustifiably contributed to the difficulties between defendant and his counsel. United States v. John Doe No. I, 272 F.3d 116, 123 (2d Cir. 2001); See also United States v. Hsu, 669 F.3d 112, 123 (2d Cir. 2012). Finally, continued representation by otherwise competent counsel may violate the Sixth Amendment where counsel has an irreconcilable conflict of interest. John Doe No. 1, 272 F.3d at 125-26; Schmidt, 105 F.3d at 89; See also United States v. O'Neil, 188 F.3d 65, 70-71 (2d Cir. 1997).

An attorney disciplinary grievance may establish good cause for substitution of counsel, but the mere existence of the grievance is not dispositive. After all, if the district courts were to automatically order substitution of counsel and grant a continuance whenever a criminal

8

defendant filed a grievance, then attorneys and the courts' own trial calendars would be at the mercy of any defendant who saw fit to manipulate the proceedings. Cf. McKee at 931 (quoting United States v. Bentvena, 319 F.2d 916, 936 (2d Cir. 1963)) ("This Court has long recognized that certain restraints must be put on the reassignment of counsel lest the right be 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.'"); United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) ("[T]o hold [that a grievance creates a conflict of interest] on such unpersuasive facts would invite criminal defendants anxious to rid themselves of unwanted lawyers to queue up at the doors of bar disciplinary committees on the eve of trial. Such is not an invitation we wish to extend."). Rather, as with more informally raised complaints, the court should look into the circumstances behind the grievance to determine whether it demonstrates good cause to substitute counsel, paying particular attention to any conflict of interest the grievance might create. See O'Neil, 118 F.3d at 71-72; Mathis v. Hood, 851 F.2d 612, 795-96 (2d Cir. 1991) ("Mathis II").

The Second Circuit's decisions in O'Neil and Mathis II further demonstrate that the filing of a grievance should not automatically result in substitution of counsel. In O'Neil, 118 F.3d at 71-72, the Second Circuit reasoned that a fee dispute did not necessarily create a conflict of interest. In so reasoning, the Second Circuit cited with approval the Fourth Circuit's decision in Burns, which had in turn refused to hold that an unfounded disciplinary grievance automatically creates a conflict. Id. In Mathis II, 851 F.2d at 795-96, the Second Circuit affirmed the district court's finding of a conflict of interest where the attorney for a state habeas petitioner had let his appeal languish for years, until petitioner's disciplinary grievance finally prodded the attorney to file a grossly sub-par brief. The Second Circuit explained that the grievance created a conflict because, if the attorney had won the appeal, the state disciplinary authorities would have been

9

more likely to punish him for leaving his wrongfully convicted client in the lurch. Id. at 795. That incentive to underperform – to throw the case, really – is what created the conflict. Id. Critically, the Second Circuit also explained that the grievance must be legitimate, and that an "unwarranted" complaint should not be grounds for relief. Id. at 796.

The Court first dispenses with the notion that Hurwitz's representation is incompetent or otherwise objectively deficient. The Court was familiar with Hurwitz's work even before trial in this matter, and was therefore skeptical of this claim in the absence of specific proof. Vasquez never offered such proof; not against Hurwitz, not against any of his previous attorneys. On the contrary, whenever pressed to explain why counsel was deficient, Vasquez usually responded with vague generalities. When he instead made specific complaints, they were insubstantial – as when Vasquez complained that Sternheim did not have a full-time interpreter to answer her phone, or that Kilada did not order a transcript of his competency hearing. When the two previous presiding judges in this matter did relieve his attorneys, they did so to avoid Curcio conflict (Kilada), to accommodate Vasquez despite the lack of any legitimate complaint (Sternheim), or because of the attorney's conclusion that communications had broken down (Ginsberg). Vasquez has never demonstrated truly dilatory or incompetent conduct by counsel in the past, and has not done so now.

The Court also finds that Hurwitz has not harassed or intimidated Vasquez. Vasquez made the same complaint against Kilada, and it is quite incredible that two successive CJA attorneys would harrass their client. A charitable explanation for this complaint is that Vasquez perceived harassment that did not exist. An uncharitable explanation – quite plausible in light of his misstatements regarding Ginsberg – is that Vasquez was simply misleading the Court. Vasquez offered no specific proof (or even concrete allegations) to dispel either explanation.

Similarly, the Court finds no conflict of interest barring Hurwitz's continued representation. Hurwitz's representation did initially raise a potential Curcio conflict, but that conflict was attenuated and, regardless, Vasquez waived the conflict twice.

Nor is the Court persuaded by Vasquez's contention that his attorneys tried to force him to plead guilty despite his factual innocence. Indeed, the Court would expect to see some pressure brought to bear whenever an attorney in the exercise of his professional judgment decides that a guilty plea is in his client's best interests. On the other hand, the Court can conceive of a scenario in which an attorney crosses a line between wise and forceful counsel and impermissible pressure – but that is simply not what happened here. Rather, at the March 19, 2013 conference before Judge Mann, Vasquez had difficulty distinguishing between the government's Pinkerton theory of accomplice liability and the different accusation – which the government did not make, then or at trial – that he actually pulled the trigger in the murder of Liliana Colmenares. (Hr'g Tr. 29-31, ECF No. 209). That confusion seemingly led him to incorrectly believe that Hurwitz was counseling him to admit to something he did not do. In any event, the Court fully credits Hurwitz's representation that, while he has in the past strongly recommended a plea deal, he has never pressured Vasquez to accept it.

The Court also concludes that the relationship between Vasquez and Hurwitz was not completely and irretrievably broken. Hurwitz detailed certain difficulties in communication, but nothing approaching a total breakdown. Vasquez claims the relationship is destroyed. However, under McKee the Court need not rely on Vasquez's own subjective perception of the relationship. Vasquez must proffer some legitimate reason for the breakdown, and the Court has already found that no such reason exists. Moreover, Vasquez's subjective perception of the relationship is entitled to even less weight, because Vasquez's misrepresentation of his past

relationship with Ginsberg destroys his credibility when describing his relationship with Hurwitz. Besides, even if one gives Vasquez the benefit of tremendous doubt by assuming that his misrepresentations were merely negligent, his newly professed regard for Ginsberg demonstrated that Vasquez can maintain a relationship with counsel he has previously scorned. Finally, the Court notes that Vasquez's unjustified attempts to terminate his attorneys have no doubt contributed to the difficulties in his relationship with counsel, a factor that weighs against relieving Hurwitz.

The fact that Vasquez has filed a disciplinary grievance certainly warrants close attention, but does not alter the result. Of course, one might be tempted to simply dismiss the grievance as a contrivance, given Vasquez's misrepresentations to the Court. Nevertheless, the Court has reviewed Vasquez's grievance for any substantive allegations that would establish good cause to terminate Hurwitz, including the type of disincentive-based conflict identified in Mathis. But the grievance is just another partial rehash of Vasquez's prior complaints, and appears baseless for all the reasons set forth more fully in the preceding pages. Moreover, the grievance, even if it were legitimate, would not have provided Hurwitz with incentive to shirk his duty to zealously defend the case; if anything, a legitimate grievance would have provided him with incentive to redouble his efforts to secure an acquittal and thus avoid discipline.

In conclusion, the Court notes that a certain amount of attorney-client friction was to be expected here, perhaps even encouraged, because it demonstrated that Vasquez was fully invested in defending the serious charges against him. But no defendant is entitled to expect the impossible from counsel. No defendant is entitled to substitution of counsel on the eve of trial by means of generic, conclusory, and baseless complaints. And certainly no defendant is entitled to mislead the Court in an effort to secure new counsel. Vasquez's attorneys have discharged

their ethical burdens with due professionalism. There was no substance to Vasquez's complaints; no complete and irretrievable breakdown in the attorney-client relationship; and no conflict of interest, even in the face of his decision to file a grievance. Accordingly, Vasquez's motion to relieve attorney Hurwitz and substitute new counsel was denied.


Dated: Brooklyn, New York
      September 12, 2013

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge